## IN THE UNITED STATES DISTRICT COURT, DISTRICT OF KANSAS
## KANSAS CITY, KANSAS

| | |
|---|---|
| **ANTHONY ALVAREZ** | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) |
| v. | ) |
| | ) |
| **UNIVERSITY OF KANSAS** | ) |
| **Please serve at:** | ) |
| 245 Strong Hall | ) |
| 1450 Jayhawk Blvd. | ) |
| Lawrence, KS 66045 | ) |
| | ) **Case No.** |
| **EMILY CHELLGREN** | ) |
| in her official capacity as Assistant | ) |
| Director of KU Housing and Residence | ) |
| Life | ) |
| **Please serve at:** | ) |
| 245 Strong Hall | ) |
| 1450 Jayhawk Blvd. | ) |
| Lawrence, KS 66045 | ) |
| | ) |
| **SARAH WATERS** | ) |
| in her official capacity as Director | ) |
| of KU Housing and Residence | ) |
| Life | ) |
| **Please serve at:** | ) |
| 245 Strong Hall | ) |
| 1450 Jayhawk Blvd. | ) |
| Lawrence, KS 66045 | ) |

## **COMPLAINT**

COMES NOW, Anthony Alvarez ("Plaintiff") by and through the undersigned counsel to seek redress for harm suffered as a result of the conduct of Defendant University of Kansas ("KU") and its agents: Emily Chellgren and Sarah Waters.

1

## PARTIES

1. Anthony Alvarez is a resident of the State of Kansas.

2. Defendant KU is a state-sponsored educational institution whose main campus is located in Lawrence, Kansas. KU is a "state actor" within the meaning of 42 U.S.C. § 1983.

3. KU acts through its employees and agents, all of whom were acting within their scope of employment and/or agency during the events described herein.

4. At all material times, Defendant Emily Chellgren ("Chellgren") was an employee of Defendant KU and is being sued in her official capacity.

5. At all material times, Defendant Sarah Waters ("Waters") was an employee of Defendant KU and is being sued in her official capacity.

## JURISDICTION AND VENUE

6. This case arises under 42 U.S.C. § 1983, the First Amendment, and the Due Process Clause of the Fourteenth Amendment. As such, Plaintiff has presented a federal question and the court has jurisdiction over Plaintiff's claims pursuant to 28 U.S.C. § 1331.

7. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(2) because the events and omissions giving rise to the claim occurred in this District.

## FACTS COMMON TO ALL COUNTS

8. Plaintiff is a current student at KU and was employed as a Proctor – a position similar to a Resident Assistant – in KU's Grace Pearson Scholarship Hall during the 2024-25 school year.

9. On February 27, 2025, the KCUR news service published an article (hereinafter "Article") entitled "KU students protest housing changes they say will harm trans and nonbinary residents."

10. The Article detailed recently announced policy changes by KU in response to recent state and federal legislation.

11. As part of those policy changes, Grace Pearson announced it would eliminate the hall's gender-neutral bathroom and any gender-inclusive room assignments, as well as require students to use the bathroom that aligns with the gender listed in their KU student file.

12. Plaintiff was interviewed by the reporter and quoted in the Article.

13. The Article identifies Plaintiff in the first paragraph he is mentioned as a student who has lived at Grace Pearson for three years.

14. Plaintiff is also identified in the Article as transgender, lending credibility to his statements on the impact the policy changes will have on LGBTQ+ individuals.

15. The Article later details that Plaintiff has worked as a Proctor at Grace Pearson during his time living there.

16. At no point in the Article is Plaintiff identified as speaking as a representative or otherwise speaking on behalf of KU Housing and Residence Life.

17. On March 7, 2025, Plaintiff met with Defendant Chellgren and the director of Grace Pearson.

18. During that meeting, Plaintiff was placed on employment probation until March 13, 2026.

19. Plaintiff received a hand-delivered letter from Chellgren on March 13, 2025 detailing the March 7 meeting.

20. The letter details three topics discussed in the meeting, all related to Plaintiff's comments published in the Article.

21. The letter further details two provisions of the "Residence Life 2024-25 Undergraduate Staff Position Description" and implies Plaintiff violated those provisions through his conduct and providing comment in the Article.

22. The first provision states in part that "[Staff will] demonstrate a commitment to personal integrity, such as modeling good judgment, ethical behavior, and adherence to laws and policies."

23. The second provision states in part that "[Staff will] refer a student's parents, relatives, friends, and/or the media (press) to your supervisor. Unless otherwise designated, the Director of Residence Life in conjunction with KU Strategic Communications & Public Affairs will respond to all media inquiries."

24. The letter proceeds to detail three items Plaintiff allegedly agreed to during the March 7 meeting as part of an "Action Plan," including directing all media inquiries to his direct supervisor, removing sticky notes from Grace Pearson, and submitting a letter rescinding his acceptance of a similar Proctor position offered to him for the 2025-26 school year.

25. The March 13, 2025 letter notified Plaintiff of his right to appeal the decision placing him on probation.

26. That right included only the right to send an email to the Director of Residence Life within three business days, and specified little of what, if anything, was to be included.

27. On March 14, 2025, and within the three-day period of Plaintiff's right to appeal his probationary decision, Chellgren informed Plaintiff via another letter that he was terminated from his position, effective that day.

28. Defendant Waters, as the Executive Director of KU Housing and Residence Life and Defendant Chellgren's supervisor, was copied on Plaintiff's termination letter.

29. Chellgren stated that Plaintiff's termination was based on the conduct which led to his probationary status – speaking to a member of the press – and on alleged additional policy violations since the March 7 meeting.

30. The letter informed Plaintiff he would also lose his compensation, room in Grace Pearson, and the meal plan associated with his position as Proctor.

31. Plaintiff was told he had until Friday, March 21, 2025 to vacate Grace Pearson, but was also not permitted to be in the building effective immediately until he had scheduled a move-out time with Chellgren to be escorted through the building.

32. Plaintiff was further informed that he would not be permitted to live in any KU scholarship hall were he to decide he wanted to live on campus during the 2025-26 school year.

33. Plaintiff was again offered a vague appeal right to submit information via email to the Director of Residence Life – this time within five (5) business days or by the March 21, 2025 move-out deadline.

34. Plaintiff incurred expenses associated with a truncated move-out and finding new living arrangements, as well as stress, pain and suffering.

## COUNT II
### SUBSTANTIVE VIOLATION OF 42 U.S.C. § 1983 et seq., FOR A FACIAL AND AS-APPLIED CHALLENGE TO POLICY RESTRICTING MEDIA COMMUNICATION (ALL DEFENDANTS)

35. Plaintiff incorporates by reference the allegations contained in Paragraphs 1 through 34 above as if fully set forth herein.

36. Defendant KU, acting under the color of state law, maintains and enforces a policy and practice that requires Residence Life student employees to refer media (press) inquiries to

5

a supervisor in a manner which appears to entirely restrict their ability to speak to the media.

37. This policy functions as a prior restraint on speech and imposes content-based and viewpoint-based restrictions on a public employee in violation of the First Amendment.

38. The policy is overbroad on its face because it restricts protected speech, including that by employees made in their capacity as a private citizen on matters of public concern.

39. The policy is also impermissibly vague, leaving students and employees unclear and uncertain as to what speech is prohibited, when restrictions apply, and what circumstances – if any – allow for media engagement.

40. Plaintiff was terminated from his position of employment pursuant to this policy, and in direct response to his comments in the Article which appeared critical of a recent KU policy change and how it may harm LGBTQ+ community members.

41. Defendant KU's policy and enforcement thereof through Defendants Chellgren and Waters caused Plaintiff to suffer a deprivation of his constitutional rights and chilled the exercise of protected speech by Plaintiff and others similarly situated.

42. The interest Defendant KU has in workplace efficiency does not justify the restrictions as imposed in the policy, particularly as applied to student employees.

43. Defendants are liable under 42 U.S.C. § 1983 for maintaining and enforcing a policy that violates clearly established constitutional rights under the First Amendment.

WHEREFORE, Plaintiff respectfully requests the Court enter judgment in his favor against Defendants for compensatory damages, for attorneys' fees, expert witness fees and litigation expenses pursuant to 42 U.S.C. § 1988(b), for costs, and for such other and further relief as it deems fair and equitable under the circumstances.

Plaintiff would further request that this Court enter a declaratory judgment stating Defendant KU's policy regarding employee interactions with the media is unconstitutional as applied to the First Amendment due to its overbreadth and vagueness, as well as enter an order enjoining Defendant KU from enforcing such a policy or any similar policy which restricts or otherwise prohibits speaking to members of the media.

## COUNT II
## FIRST AMENDMENT RETALIATION IN VIOLATION OF 42 U.S.C. § 1983

44. Plaintiff incorporates by reference the allegations contained in Paragraphs 1 through 43 above as if fully set forth herein.

45. The First Amendment protects individuals from retaliation by government actors for engaging in constitutionally protected speech.

46. Plaintiff engaged in protected speech by speaking to a member of the media in their capacity as a private citizen on a matter of public concern – specifically by criticizing Defendant KU's policies and practices related to housing policies for LGBTQ+ community members as applied to recent state and federal legislative directives.

47. Plaintiff was first identified in the Article in his capacity as a student of the university, and was identified in the context of his status as a transgender man.

48. It was merely detailed later in the Article that he also worked as a Proctor at Grace Pearson.

49. There is no indication Plaintiff was speaking on behalf of the University or in his role as an employee, and as such his speech was made outside the scope of his official duties and did not disrupt the functioning of the university or its operations.

50. Defendant KU, through its agents Defendant Chellgren and Defendant Waters, was aware of Plaintiff's protected speech and acted with animus toward Plaintiff as a result.

51. Within one week of Plaintiff's media statements being published, Plaintiff was informed he was placed on probationary employment status for the next year.

52. The only reasons stated for the termination were in direct reference to Plaintiff's protected speech to a member of the press.

53. When Plaintiff was ultimately terminated one week later, the reasons for his probation were listed as a reason for termination, in addition to other alleged policy violations that took place in the interim period.

54. Placing Plaintiff on probation and then terminating him shortly thereafter constituted an adverse action that would deter a person of ordinary firmness from engaging in similar protected speech.

55. Defendants' adverse employment action was substantially motivated by Plaintiff's protected expression and was exercised in retaliation for Plaintiff exercising rights protected by the First Amendment.

56. Defendants lack any legitimate, non-retaliatory justification for Plaintiff's termination, and any such justification offered is merely pretextual.

57. As a direct and proximate result of Defendants' retaliatory conduct, Plaintiff has suffered economic harm, reputational damage, emotional distress, and the loss of constitutionally protected employment opportunities.

WHEREFORE, Plaintiff respectfully requests the Court enter judgment in his favor against Defendants for compensatory damages, for attorneys' fees, expert witness fees and litigation expenses pursuant to 42 U.S.C. § 1988(b), for costs, and for such other and further relief as it deems fair and equitable under the circumstances.

## COUNT III

## VIOLATION OF PLAINTIFF'S RIGHT TO PROCEDURAL DUE PROCESS UNDER THE FOURTEENTH AMENDMENT – 42 U.S.C. § 1983

58. Plaintiff incorporates by reference the allegations contained in Paragraphs 1 through 57 above as if fully set forth herein.

59. Plaintiff, by nature of his status as an employee at a public university, had a property interest in continued employment and was entitled to due process before being terminated.

60. Defendants failed to provide Plaintiff with a full and complete notice of his right to appeal.

61. Defendants failed to provide Plaintiff with an opportunity to be meaningfully heard prior to the termination.

62. For what little process was provided, Defendants terminated Plaintiff before his window to attempt an appeal of his probationary status had closed.

63. As a direct and proximate result of Defendants' unlawful conduct, Plaintiff suffered tangible harm, including the loss of living quarters, income, reputational damage, emotional distress, and the deprivation of constitutionally protected rights.

WHEREFORE, Plaintiff respectfully requests the Court enter judgment in his favor against Defendants for compensatory damages, for attorneys' fees, expert witness fees and litigation expenses pursuant to 42 U.S.C. § 1988(b), for costs, and for such other and further relief as it deems fair and equitable under the circumstances.

## DEMAND AND DESIGNATION FOR JURY TRIAL

Demand is hereby made for trial by jury in this case with the location designated in Kansas City, Kansas.

Date: May 22, 2025

Respectfully submitted,

**GRISSOM MILLER LAW FIRM, LLC**

*/s/ Barry R. Grissom*
Barry R. Grissom, #10866
Conner Mitchell, D. Kan #79215
Jake Miller, #28337
1600 Genessee Street, Ste. 460
Kansas City, MO 64102
T – 816-336-1213
F – 816-384-1623
barry@grissommiller.com
cam@grissommiller.com
jake@grissommiller.com

*Attorneys for Plaintiff*

10