**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF KANSAS**

| | | |
|---|---|---|
| **ANTHONY ALVAREZ,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **No. 2:25-cv-02281-KHV-TJJ** |
| | ) | |
| **EMILY CHELLGREN** in her individual | ) | |
| capacity and **SARAH WATERS** in her | ) | |
| individual capacity, | ) | |
| | ) | |
| **Defendants.** | ) | |

<u>**DEFENDANT SARAH WATERS' MEMORANDUM IN SUPPORT OF HER MOTION
TO DISMISS**</u>

## INTRODUCTION

As discussed in the Memorandum in Support of co-defendant Emily Chellgren's Motion to Dismiss, Plaintiff's lawsuit fails to state a claim and the individual defendants—who are sued in their individual capacities—are also entitled to qualified immunity. Those same arguments apply with equal force to Defendant Sarah Waters, and Ms. Waters incorporates all of them by reference into this brief.

A short additional discussion is necessary in relation to Ms. Waters, however, because she is mentioned only *six times* in the entire complaint, and mostly in entirely passive settings, like being copied on certain correspondence. That is woefully insufficient to state a claim or overcome qualified immunity on a § 1983 claim, when the governing law requires specific and particularized allegations about what each individual defendant supposedly did to Plaintiff that allegedly violates the Constitution. Because Plaintiff fails to do so, his claims against Ms. Waters must fail on this preliminary basis alone.

By way of introduction for the full case, Plaintiff Anthony Alvarez is a current KU student who was previously employed as a proctor at KU's Grace Pearson Scholarship Hall. As proctor at Grace Pearson, Plaintiff's duties were similar to those of a resident assistant in a traditional dormitory, including enforcement of relevant building-use policies, such as those governing bathroom facilities.

Grace Pearson is a co-ed scholarship hall that includes both male and female residents. As an older building, Grace Pearson has communal bathrooms, rather than single-user bathrooms that are more common in modern residence halls. While KU does have certain residential housing options designated as gender-neutral,[1] in early 2025, KU determined that the legally applicable

---

[1] These are largely suite-style arrangements, with single-user bathrooms and showers.

building code required Grace Pearson's *communal* bathrooms to be designated by sex, and it directed that any gender-neutral use of Grace Pearson's communal bathrooms be discontinued.

Plaintiff objected to the change in policy, and he told his supervisors at KU that he would refuse to implement it as proctor. He also undertook various actions to undermine the policy, including criticizing the policy in an interview with the news organization KCUR, which then published that criticism, specifically identifying Plaintiff as a proctor. Although Plaintiff later wrote an op-ed[2] in the University Daily Kansan stating that his refusal to enforce housing policy was an infraction that contributed to his eventual termination as proctor, he claims in this lawsuit that he was terminated principally because he violated a KU policy that allegedly requires housing employees to refer all media inquiries to a supervisor instead of responding.

Plaintiff brings this lawsuit against two KU employees in their individual capacities only. As relevant to this brief, Plaintiff asserts First Amendment and procedural due process claims under 42 U.S.C. § 1983 against former Executive Director of KU Housing and Residence Life Sarah Waters. But as an individual being sued for damages in her individual capacity, Ms. Waters enjoys qualified immunity. Given that Plaintiff fails to plead any constitutional violation, let alone a clearly established one, Plaintiff's claims against Ms. Waters should be dismissed under Rule 12(b)(6) for failure to state a claim and/or based on qualified immunity. Dismissal of all claims against Ms. Waters is especially appropriate in this case, where Ms. Waters is only referenced in six paragraphs of the FAC, and in barebones and conclusory fashion.

---

[2] *How Getting Fired for Protesting Made Me Think About Power*, University Daily Kansan, https://tinyurl.com/y76xzbyf ("I decided not to enforce any policy affecting gender-neutral hosing at [Grace Pearsons]. I said as much to supervisors and later to the media . . . .").

## STATEMENT OF FACTS[3]

During the 2024-2025 academic year, Plaintiff was employed as a proctor at KU's Grace Pearson Scholarship Hall.  Doc. 17 ("FAC") ¶ 6.  The duties of a proctor at a scholarship hall are similar to those of a resident assistant in a traditional dormitory.  *Id.*

In the Spring semester of 2025, KU announced a policy change whereby KU would eliminate Grace Pearson's "gender-neutral bathroom" and "gender-inclusive room assignments" and "require students to use the bathroom that aligns with their gender listed" in KU's records.  *Id.* ¶¶ 9-11.  In February 2025, Plaintiff was interviewed by the KCUR news service about the policy change, and Plaintiff's statements were subsequently published by KCUR in an article that identified Plaintiff as a proctor.  *Id.* ¶¶ 7, 10-13.  Relevant excerpts of that article include:

> Alvarez worked as a proctor, which he said is similar to a resident assistant, at GP. He said he applied to serve as a proctor in GP again for the 2025-26 school year, but he was assigned to a different residence hall. He said he asked his bosses about the new assignment.
>
> "They told me that they weren't confident that I would implement the policies that they were going to change at GP," he said.  "At a more personal meeting I had with someone higher in housing, they told me it's because they were worried I was going to be frustrated and because they were changing the policies."
>
> …
>
> Alvarez said he's turning down the offer to work at another residence hall, and he's moving out of student housing.  But he said several other students are staying to try to preserve the community they've built.
>
> "Currently, the plan is for people to stay . . . as we continue to fight. Because this is definitely a political decision," Alvarez said, referencing several anti-trans executive orders and attacks on diversity, equity and inclusion by the Trump administration.
>
> "But those laws are incredibly fluid. There could be court cases; we could pass something to Congress," he said. "So a lot of people are staying, just in case we're able to overturn something or the fight within KU is able to go our way."

---

[3]  For purposes of this motion, Ms. Waters relies on the facts as alleged by Plaintiff.  Ms. Waters reserves the right to contest any or all of Plaintiff's allegations, should the case proceed beyond the motion to dismiss stage (it should not).

*KU Students Protest Housing Changes They Say Will Harm Trans and Nonbinary Residents*, KCUR, https://tinyurl.com/3926nf5m.[4]

Plaintiff claims that, thereafter, he suffered various corrective actions with respect to his employment, culminating in his termination, and that such corrective actions were predicated, at least in part, on Plaintiff's violation of a KU policy (referred to herein as the "Media-Referral Policy") that allegedly required residence-life employees to direct all media inquiries to their supervisor, rather than responding directly. FAC ¶¶ 15-25. Legally, Plaintiff claims the Media-Referral Policy is an unconstitutional prior restraint on speech that restricted his ability to speak as a private citizen on matters of public concern. *Id.* ¶¶ 33-41. He also claims that the corrective actions were retaliation for the content of his speech as a private citizen on a matter of public concern. *Id.* ¶¶ 42-55. Finally, Plaintiff claims that he was not given full and complete notice of his right to appeal corrective actions or an opportunity to be meaningfully heard prior to termination, resulting in a violation of his due process rights. *Id.* ¶¶ 56-61.

Plaintiff originally filed these claims against KU and Defendants Chellgren and Sarah Waters in their official capacities, seeking prospective relief, damages, and attorneys' fees. *See* Doc. 1. He sought, and was granted leave, to amend these claims in response to Defendants' first motion to dismiss. *See* Docs. 10-17. The amended complaint dropped all claims against KU, changed the official-capacity claims to individual-capacity claims, and dropped all requests for prospective relief. *See, e.g.*, Doc. 13-1. Plaintiff now seeks only to recover damages and fees.

---

[4] Because the FAC refers to the KCUR article and relies on it, the Court can consider the full content of the article in resolving Defendants' motion. *See, e.g.*, *Woods v. Ross*, 2021 WL 3077236, at *16 (D. Kan. 2021), *aff'd* 2023 WL 1794170 (10th Cir. 2023).

## SPECIFIC RELIEF SOUGHT AND NATURE OF THE MATTER

Defendant Waters brings this motion to dismiss the FAC under Rule 12(b)(6) because Plaintiff fails to state any claim against Ms. Waters, warranting dismissal. Ms. Waters is also entitled to qualified immunity, likewise warranting dismissal under Rule 12(b)(6).

## STANDARD OF REVIEW

***Failure to State a Claim.*** "[T]o withstand a Rule 12(b)(6) motion to dismiss, a complaint must contain enough allegations of fact, taken as true, to state a claim to relief that is plausible on its face." *Khalik v. United Air Lines*, 671 F.3d 1188, 1190 (10th Cir. 2012) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim is facially plausible when the allegations give rise to a reasonable inference that the defendant is liable." *Mayfield v. Bethards*, 826 F.3d 1252, 1255 (10th Cir. 2016). While extensive, detailed factual allegations are not required, survival of a 12(b)(6) motion to dismiss "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause action will not do." *Twombly*, 550 U.S. at 555.

In a § 1983 action, it is "particularly important" for a complaint to "make clear exactly *who* is alleged to have done *what* to *whom*, to provide each individual with fair notice as to the basis of the claims against him or her, as distinguished from collective allegations against the state." *Brown v. Montoya*, 662 F.3d 1152, 1163 (10th Cir. 2011). "When various officials have taken different actions with respect to a plaintiff, the plaintiff's facile, passive-voice showing that [her] rights 'were violated' will not suffice." *Pahls v. Thomas*, 718 F.3d 1210, 1225-26 (10th Cir. 2013). "Likewise insufficient is plaintiff's more active-voice yet undifferentiated contention that 'defendants' infringed his rights.'" *Id.* at 1226.

***Qualified Immunity.*** Qualified immunity generally shields "government officials performing discretionary functions" from liability for damages where the conduct "does not violate

5

clearly established statutory or constitutional rights." *See Tonkovich v. Kansas Bd. of Regents*, 159 F.3d 504, 516 (10th Cir. 1998). When a qualified immunity defense is raised, this Court "must decide (1) whether the plaintiff plausibly alleged a violation of a constitutional right, and (2) if so, whether that right was clearly established at the time of the alleged violation." *Frey v. Town of Jackson, Wyo.*, 41 F.4th 1223, 1232 (10th Cir. 2022). Courts "may address either prong first," *id.*, and the "[p]laintiff bears the burden to show the law was clearly established," *id.* at 1235.

"Clearly established" means the law (at the time of challenged conduct) was "sufficiently clear that every reasonable official would understand that what he is doing is unlawful"; it must be "beyond debate." *District of Columbia v. Wesby*, 138 S. Ct. 577, 589 (2018). This "can come from a Supreme Court or Tenth Circuit decision on point, or from the clearly established weight of authority from other courts." *Frey*, 41 F.4th at 1235. The Supreme Court has "repeatedly told courts . . . not to define clearly established law at a high level of generality." *Kisela v. Hughes*, 138 S. Ct. 1148, 1152 (2018). The Plaintiff "must articulate the clearly established constitutional right and the defendant's conduct which violated the right with specificity." *Id.*

## ARGUMENT

Plaintiff asserts three constitutional claims under 42 U.S.C. § 1983 against Ms. Waters in her individual capacity, predicated on the First Amendment and the Due Process Clause. Count I fails for the same reasons as stated in Defendant Chellgren's motion to dismiss brief and set forth again in Section I below—namely, any facial challenge to the Media-Referral policy is not cognizable against Defendant Waters in her individual capacity and any conclusory "as applied" challenge in Count I is duplicative of Count II. Counts II and III fail because the FAC utterly lacks any specific allegations of unconstitutional conduct by Defendant Waters herself, as set forth in

Section II below.  Counts II and III also fail for the reasons set forth in Ms. Chellgren's motion to dismiss brief, which are incorporated by reference in Section III below.

## I.    <u>COUNT I FAILS TO STATE A CLAIM</u>

Count I appears to be a relic of the original complaint against the University and individuals in their *official* capacities.  Indeed, the vast majority of allegations in Count I are facial challenges to the Media-Referral Policy, and facial challenges are simply not cognizable against individual defendants in their individual capacities.  Further, any "as applied" challenge is simply duplicative of Count II (retaliation), and the claims are thus appropriate addressed under that framework.

Beginning with Count I's facial challenges, Plaintiff claims that Ms. Waters "maintained and enforced a policy and practice that requires Residence Life student employees to refer media (press) inquiries to a supervisor in a manner which *appears* to entirely restrict their ability to speak to the media."  FAC ¶ 34 (emphasis added).  Plaintiff claims this policy is "overbroad on its face" (*id.* ¶ 36), is "impermissibly vague" (*id.* ¶ 37), "imposes content-based and viewpoint-based restrictions" (*id.* ¶ 35), and "functions as a prior restraint on speech" (*id.*).  Those types of claims are not actionable against individual defendants in their individual capacities, because "when professors or students challenge a university's policies, the proper defendant party is the university or university board."  *Buchanan v. Alexander*, 919 F.3d 847, 854-55 (5th Cir. 2019) (collecting cases).  In *Buchanan*, for example, the plaintiff sued various university administrators on a facial First Amendment challenge to the school's sexual harassment policy.  *Id.* at 855.  The Fifth Circuit rejected that effort, because the plaintiff "sued only employees and officials with individual and limited roles in administration of LSU's polices, but with no ultimate authority to enforce them."  *Id.*  The university itself is the only proper defendant for a facial challenge.  *Id.*

This makes sense, because "[a] facial challenge usually invites prospective relief, such as a declaration or injunction, whereas an as-applied challenge invites narrower, retrospective relief,

such as damages." *Schmidt v. Falcon School Dist.*, 2025 WL 887428 (D. Colo. 2025). And with respect to the legal claim here, "Section 1983 plaintiffs may sue individual-capacity defendants only for money damages and official-capacity defendants only for injunctive relief." *Brown*, 662 F.3d at 1161 n.5. Simply put, there is no cognizable claim for a facial constitutional challenge against individual University administrators in their *individual* capacity.[5]

To the extent Plaintiff attempts to sustain Count I based on conclusory allegations of an "as applied" challenge, that's duplicative of Count II. Indeed, Plaintiff's allegation in this respect is that he was terminated "pursuant to this policy" (*id.* ¶ 38). That's the same allegation made in the retaliation claim in Count II. And no matter how Plaintiff characterizes it, when a public employee claims adverse action as the result of an alleged First Amendment violation, the proper construct is a First Amendment retaliation claim, with all of the applicable public-employee doctrines discussed in Section II, *infra*. *See Gilmore v. Beveridge*, 2023 WL 4104579, at *7 (D. Kan. 2023); *see also MacRae v. Mattos*, 106 F.4th 122, 132-35 (1st Cir. 2024).

Finally, in the event this Court determines that any of Count I is independently cognizable (it is not), Ms. Waters is entitled to qualified immunity. Ms. Waters is not aware of any case, much less one binding on this Court, holding that a media-referral policy like the one here is unconstitutional in any respect. Thus, any alleged constitutional violation is not clearly established, entitling Ms. Waters to dismissal based on qualified immunity.

---

[5] Even if there were such a cause of action, Plaintiff—no longer an employee nor subject to this policy—lacks standing, as the prospective injunctive relief central to any facial challenge would have no impact on him. *See, e.g.*, *Savage v. Gee*, 665 F.3d 732, 740-41 (6th Cir. 2012).

II.    **PLAINTIFF HAS FAILED TO MAKE SPECIFIC ALLEGATIONS OF UNCONSTITUTIONAL CONDUCT BY DEFENDANT WATERS AS TO COUNTS II AND III**

This case is a prime example of the importance of requiring that the complaint allege "exactly *who* is alleged to have done *what* to *whom*." *See Brown*, 662 F.3d at 1163. KU is no longer being sued in this case—directly or via an official capacity claim. Defendant Waters is ostensibly being sued for personal damages in her individual capacity for her individual actions that allegedly violated Plaintiff's constitutional rights. However, the fact section of the FAC (FAC ¶¶ 6-32) only alleges that Ms. Waters was the Executive Director of KU Housing and Residence life (FAC ¶ 3) and "was copied on Plaintiff's termination letter" (*id.* ¶ 26). Thus, Defendant Waters has no way of knowing from the allegations in the FAC what she is actually alleged to have *done* and under what theory of liability Plaintiff claims her actions were unconstitutional.

A.    **Plaintiff Has Failed to Allege Facts Sufficient to State a Claim against Defendant Waters for First Amendment Retaliation**

The Tenth Circuit has clearly held that "[a] § 1983 defendant sued in an individual capacity may be subject to personal liability and/or supervisory liability," but not "under a theory of respondeat superior." *See Brown*, 662 F.3d at 1163-64. Personal liability "must be based on personal involvement in the alleged constitutional violation." *Id.* at 1163. "[T]o establish supervisory liability, a plaintiff must show that (1) the defendant promulgated, created, implemented or possessed responsibility for the continued operation of a policy that (2) caused the complained of constitutional harm, and (3) acted with the state of mind required to establish the alleged constitutional deprivation." *Id.* at 1164 (internal quotation marks omitted).

The only allegations naming any Defendants under Count II are as follows:

- "Defendant Chellgren and Defendant Waters were aware of Plaintiff's protected speech and **acted with animus** toward Plaintiff as a result." FAC ¶ 48 (emphasis added).

- "Defendants' adverse employment action was substantially motivated by Plaintiff's protected expression and was exercised in retaliation for Plaintiff exercising rights protected by the First Amendment." *Id.* ¶ 53.

- "Defendants lack any legitimate, non-retaliatory justification for Plaintiff's termination, and any such justification offered is merely pretextual." *Id.* ¶ 54.

- "As a direct and proximate result of Defendants' retaliatory conduct, Plaintiff has suffered economic harm, reputational damage, emotional distress, and the loss of constitutionally protected employment opportunities." *Id.* ¶ 55.[6]

Based on these allegations, it is impossible to know whether Plaintiff is alleging Defendant Waters was "personally involved" in Plaintiff's probation or termination decisions or responsible as a supervisor. Even when taken with Plaintiff's factual allegations that Ms. Waters was the Executive Director of KU Housing and Residence life (FAC ¶ 3) and "was copied on Plaintiff's termination letter" (*id.* ¶ 26), Plaintiff has failed to allege any specific action taken by Defendant Waters to indicate that she was "personally involved" in Plaintiff's probation and termination, dooming any claim as to personal liability.

To the extent that Plaintiff might try to argue that he is asserting a claim of supervisory liability, that claim must fail because, for the reasons set forth below and in further detail in Defendant Chellgren's brief, Plaintiff has failed to allege any underlying constitutional violation by a subordinate that could support a claim of supervisory liability. *See Marin v. King*, 720 F. App'x 923, 941-42 (10th Cir. 2018) ("When a § 1983 plaintiff pursues a claim of supervisory liability, he must show the subordinate violated his constitutional rights—a supervisor cannot be liable if the subordinate did not commit a violation.").

---

[6] It is notable that none of the general references to "Defendants" in the Count II allegations were edited between the Original Complaint—against KU and Defendants Chellgren and Waters in their official capacities—and the First Amended Complaint—against Defendants Chellgren and Waters in their individual capacities. *See* ECF No. 13-1.

Ultimately, Defendant Waters does not have adequate notice of the claims against her—the exact issue that the Tenth Circuit's pleading standard for all cases, and especially § 1983 cases—seeks to avoid and, thus, Count I should be dismissed as to her.

**B.**  **Plaintiff Has Failed to Allege Facts Sufficient to State a Claim against Defendant Waters for Violation of Plaintiff's Fourteenth Amendment Procedural Due Process Rights**

Count III only refers to "Defendants" generally and as follows:

- Defendants **failed to provide** Plaintiff with a full and complete notice of his right to appeal.  FAC ¶ 58 (emphasis added).

- Defendants **failed to provide** Plaintiff with an opportunity to be meaningfully heard prior to the termination.  *Id.* ¶ 59 (emphasis added).

- For what little process was provided, Defendants **terminated** Plaintiff before his window to attempt an appeal of his probationary status had closed.  *Id.* ¶ 60 (emphasis added).

- As a direct and proximate result of Defendants' unlawful conduct, Plaintiff suffered tangible harm, including the loss of living quarters, income, reputational damage, emotional distress, and the deprivation of constitutionally protected rights.  *Id.* ¶ 61.

Though three of the paragraphs refer to specific actions, they only refer to "Defendants" generally and provide no insight into whether or to what extent Defendant Waters was "personally involved" in the probation or termination process.[7]  Therefore, there can be no claim of personal liability against Defendant Waters for a procedural due process violation.  *See Brown*, 662 F.3d at 1164.

Nor has Plaintiff alleged enough for supervisory liability.  There is no allegation that Defendant Waters had any responsibility for the probation or termination process generally or as

---

[7] It is notable that none of the Count III allegations were edited between the Original Complaint—against KU and Defendants Chellgren and Waters in their official capacities—and the First Amended Complaint—against Defendants Chellgren and Waters in their individual capacities. *See* ECF No. 13-1.

applied to Plaintiff.  *See Brown*, 662 F.3d at 1164; *see also Marin*, 720 F. App'x at 941 (for supervisory liability, plaintiff must show "an 'affirmative link' between the supervisor and the constitutional violation.'  To show the requisite affirmative link, a plaintiff must satisfy three elements: '(1) personal involvement; (2) causation; and (3) state of mind.'" (quoting *Estate of Booker v. Gomez*, 745 F.3d 405, 435 (10th Cir. 2014)).  Being copied on a letter is not enough to state a claim for supervisory liability against Defendant Waters.  *See Marin*, 720 F. App'x at 941 ("It is not enough for a plaintiff arguing for the imposition of supervisory liability to show that the supervisor had knowledge of his subordinate's conduct." (citing *Booker*, 745 F.3d at 435)).  Nor is supervisory liability possible where Plaintiff was, in fact, afforded adequate process (as set forth in further detail in Section III below and in Defendant Chellgren's brief).  *See Marin* 720 F. App'x at 941-42.

### III.    PLAINTIFF'S ALLEGATIONS OF FIRST AMENDMENT RETALIATION AND PROCEDURAL DUE PROCESS VIOLATIONS FAIL TO STATE A CLAIM AGAINST ANY DEFENDANT

Counts II and III also fail for the reasons set forth in Sections II and III of Defendant Chellgren's motion to dismiss brief.  Defendant Waters hereby incorporates those sections of Defendant Chellgren's brief.

In short, Plaintiff fails to state a claim for First Amendment retaliation because his speech was made pursuant to his official duties as a proctor, where he spoke as a KU employee about a policy he was required to enforce in his role, including his unwillingness to enforce that policy. Therefore, Plaintiff cannot satisfy the *Garcetti/Pickering* analysis used to evaluate First Amendment retaliation claims.  *See Knopf v. Williams*, 884 F.3d 939, 945 (10th Cir. 2018); *see also Brammer-Hoelter v. Twin Peaks Charter Academy*, 492 F.3d 1192, 1202-03 (10th Cir. 2007) (citing *Garcetti v. Ceballos*, 547 U.S. 410 (2006) and *Pickering v. Bd. of Educ.*, 391 U.S. 563 (1968)).  Because Plaintiff fails to state a claim of First Amendment retaliation, he also fails the

first prong of the qualified immunity analysis. *Frey*, 41 F.4th at 1232. Finally, Plaintiff fails the second prong of the qualified immunity analysis because there no is clearly established law holding that a proctor (or very factually similar employee) is not acting pursuant to his official duties when discussing [with the media] his unwillingness to enforce a housing policy that his job required him to enforce.

Plaintiff also fails to state a claim for a procedural due process violation. He fails the first step of the two-step inquiry by failing to properly allege a property interest in continued employment. Specifically, he fails to include any factual allegations to suggest that his employment as proctor was anything other than at-will. *See Washington v. Unified Government of Wyandotte Cty, Kan.*, 847 F.3d 1192, 1201 (10th Cir. 2017) (public employment in Kansas is presumptively at-will). He also fails the second step of the inquiry because was afforded adequate process before being terminated, including "(1) oral or written notice . . . of the charges against him; (2) an explanation of . . . [KU]'s evidence; and (3) an opportunity . . . to present his side of the story." *Merrifield v. Bd. Of Cnty. Comm'rs for Cnty. of Santa Fe*, 654 F.3d 1073 (10th Cir. 2011). He also had access to the Kansas Judicial Review Act (KJRA), Kan. Stat. Ann. §§ 77-601–631, which constitutes an adequate post-deprivation remedy. *See, e.g., Barrow*, 2023 WL 10101935, at *6; *see also Gaskill v. Fort Hays State Univ.*, 70 P.3d 693, 695 (Kan. Ct. App. 2003) (holding "[t]he KJRA establishes the exclusive means of judicial review of agency actions," including actions taken by state educational institutions). Because Plaintiff fails to state a claim of a procedural due process violation, he also fails the first prong of the qualified immunity analysis. *Frey*, 41 F.4th at 1232. Finally, Plaintiff fails the second prong of the qualified immunity analysis because there is no clearly established law holding that more process would have been required before terminating Plaintiff in these circumstances.

## **CONCLUSION**

This Court should grant this motion and dismiss Plaintiff's claims with prejudice.

Respectfully Submitted,

/s/ Michael T. Raupp

DEREK T. TEETER          KS BAR NO. 23242
MICHAEL T. RAUPP        KS BAR NO. 25831
HUSCH BLACKWELL LLP
4801 Main, Suite 1000
Kansas City, Missouri  64112
(816) 983-8000
(816) 983-8080 (FAX)
derek.teeter@huschblackwell.com
michael.raupp@huschblackwell.com

***Attorneys for Defeandants***

## CERTIFICATE OF SERVICE

I hereby certify that on September 15, 2025, I filed the foregoing document via the Court's ECF system, which will cause a true and correct copy of the same to be served electronically on all ECF-registered counsel of record.

/s/ Michael T. Raupp
***Attorney for Defendants***