IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

ANTHONY ALVAREZ,                          )
                                          )
                    Plaintiff,            )        CIVIL ACTION
                                          )
v.                                        )        No. 25-2281-KHV
                                          )
EMILY CHELLGREN in her individual         )
capacity and SARAH WATERS in her individual )
capacity,                                 )
                                          )
                    Defendants.           )
_____   )

## MEMORANDUM AND ORDER

On July 15, 2025, Anthony Alvarez filed his first amended complaint against Emily Chellgren and Sarah Waters in their individual capacities, alleging that in violation of 42 U.S.C. §1983 et seq., they (1) implemented a policy restricting media communication (Count One), (2) retaliated based on First Amendment speech (Count Two) and (3) denied him procedural due process under the Fourteenth Amendment (Count Three). This matter is before the Court on Defendant Emily Chellgren's Motion To Dismiss (Doc. #21) and Defendant Sarah Waters' Motion To Dismiss (Doc. #23), both filed September 15, 2025. For reasons stated below, the Court sustains Chellgren's motion in part and Waters' motion in full.

## Legal Standards

Defendants seek to dismiss plaintiff's complaint under Rule 12(b)(6), Federal Rules of Civil Procedure. In ruling on a motion to dismiss for failure to state a claim under Rule 12(b)(6), the Court assumes as true all well-pleaded factual allegations and determines whether they plausibly give rise to an entitlement to relief. Ashcroft v. Iqbal, 556 U.S. 662, 679 (2009). To survive a motion to dismiss, a complaint must contain sufficient factual matter to state a claim

which is plausible—and not merely conceivable—on its face.  Id. at 679–80; Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007).  In determining whether a complaint states a plausible claim for relief, the Court draws on its judicial experience and common sense.  Iqbal, 556 U.S. at 679.

The Court need not accept as true those allegations which state only legal conclusions.  See id.; United States v. Herring, 935 F.3d 1102, 1110 (10th Cir. 2019).  Plaintiff bears the burden of framing his claims with enough factual matter to suggest that he is entitled to relief; it is not enough to make threadbare recitals of a cause of action accompanied by conclusory statements.  See Twombly, 550 U.S. at 556.  Plaintiff makes a facially plausible claim by pleading factual content from which the Court can reasonably infer that defendants are liable for the alleged misconduct.  Iqbal, 556 U.S. at 678.  Plaintiff must show more than a sheer possibility that defendants have acted unlawfully—it is not enough to plead facts that are "merely consistent" with defendants' liability.  Id. (quoting Twombly, 550 U.S. at 557).  A pleading which offers labels and conclusions, a formulaic recitation of the elements of a cause of action or naked assertions devoid of further factual enhancement will not stand.  Id.  Similarly, where the well-pleaded facts do not permit the Court to infer more than mere possibility of misconduct, the pleading has alleged—but has not "shown"—that the pleader is entitled to relief.  Id. at 679.  The degree of specificity necessary to establish plausibility and fair notice depends on context, because what constitutes fair notice under Rule 8(a)(2), Fed. R. Civ. P., depends on the type of case.  Robbins v. Okla., 519 F.3d 1242, 1248 (10th Cir. 2008).

When considering a motion to dismiss under Rule 12(b)(6), the Court generally must disregard all documents other than the complaint.  Jackson v. Integra Inc., 952 F.2d 1260, 1261 (10th Cir. 1991).  The Court may consider documents outside the complaint, however, when they are central to plaintiff's claims and are referred to in the complaint.  GFF Corp. v. Associated

Wholesale Grocers, 130 F.3d 1381, 1384 (10th Cir. 1997).

## Factual Background

Plaintiff's first amended complaint alleges as follows:

Plaintiff is a student at the University of Kansas ("KU").  During the 2024–25 school year, KU employed plaintiff as a proctor—a position similar to a resident assistant—in KU's Grace Pearson Scholarship Hall.

On February 27, 2025, the KCUR news service published an article entitled "KU students protest housing changes they say will harm trans and nonbinary residents."  The article detailed KU policy changes in response to recent state and federal legislation which would become effective in the following school year.  As part of those changes, Grace Pearson Scholarship Hall announced that it would eliminate gender-neutral bathrooms and gender-inclusive room assignments and require students to use bathrooms that aligned with the genders listed in their KU student files.

The reporter interviewed plaintiff and quoted him in the article.  The first paragraph identified plaintiff as a student who had lived at Grace Pearson for three years.  It also identified plaintiff as transgender, lending credibility to his statements on the impact of the policy changes on LGBTQ+ individuals.  The article later detailed that during his time at Grace Pearson, plaintiff worked as a proctor.  The article did not identify plaintiff as a representative or speaker on behalf of KU Housing and Residence Life.[1]

---

[1]    The first amended complaint does not further allege what the article quoted plaintiff as saying.  The first amended complaint refers to the article, and the article is central to plaintiff's claims, so the Court considers it in ruling on defendants' motions to dismiss.  See Associated Wholesale Grocers, 130 F.3d at 1384.
    The article quotes three transgender students.  See KU Students Protest Housing Changes They Say Will Harm Trans And Nonbinary Residents, KUCR,

(continued. . .)

Eight days later, on March 7, 2025, plaintiff met with Emily Chellgren, former Assistant Director of KU Housing and Residence Life, and the director of Grace Pearson.[2]  During that meeting, Chellgren and the director placed plaintiff on probation until March 13.  On March 13, plaintiff received a hand-delivered letter from Chellgren which detailed their meeting on March 7.  The letter detailed three topics they had discussed, which all related to plaintiff's comments in the article.  The letter further detailed two provisions of the "Residence Life 2024–25 Undergraduate Staff Position Description" and implied that through his conduct and providing comment for the article, plaintiff had violated those provisions.  The first provision stated in part that "[Staff will] demonstrate a commitment to personal integrity, such as modeling good judgment, ethical behavior, and adherence to laws and policies."  The second provision stated in part that "[Staff will] refer a student's parents, relatives, friends, and/or the media (press) to [his or her] supervisor. . . [and] [u]nless otherwise designated, the Director of Residence Life in conjunction with KU Strategic Communications & Public Affairs will respond to all media inquiries."  The letter detailed three items to which plaintiff allegedly agreed as part of an "Action Plan" on March 7.  These included directing all media inquiries to his direct supervisor, removing sticky notes from Grace Pearson and submitting a letter to rescind his acceptance of a proctor position which KU had offered him for the following school year at a different residence hall.

---

[1] (. . .continued)
https://www.kcur.org/education/2025-02-27/ku-students-protest-housing-changes-they-say-will-harm-trans-and-nonbinary-residents (last visited March 13, 2026).  The article stated that plaintiff had lived at Grace Pearson for three years and worked as a proctor, which is "similar to a resident assistant."  Id.  The article stated that plaintiff had applied to serve as a proctor in Grace Pearson for the 2025–26 school year, but KU assigned him to a different residence hall because his bosses "weren't confident that [he] would implement the policies that they were going to change at GP" and "were worried [he] was going to be frustrated."  Id.  The article also stated that plaintiff was turning down KU's offer to work at another residence hall.

[2]      The parties do not provide the director's name.

On March 14, Chellgren informed plaintiff that effective that day, KU had terminated his employment. Chellgren copied her supervisor, Sarah Waters, Executive Director of KU Housing and Residence Life, on the termination letter. Chellgren stated that KU had terminated plaintiff's employment because of (1) the conduct which had led to his probationary status—speaking to a member of the press; and (2) additional policy violations which had occurred since the meeting on March 7. The letter informed plaintiff that he would lose his compensation, his room in Grace Pearson and the meal plan associated with his position as proctor. The letter stated that plaintiff had until Friday, March 21 to vacate Grace Pearson. Effective immediately, he could not be in the building until he scheduled a move-out time so Chellgren could escort him through the building. The letter further informed plaintiff that if he lived on campus during the 2025–26 school year, he could not live in any scholarship hall.

In response to defendants' motions to dismiss, plaintiff has abandoned Counts One and Three of his first amended complaint.[3] The Court therefore dismisses Counts One and Three and

---

[3]     Count One alleges that defendants violated Section 1983 by maintaining and enforcing a policy and practice that required Residence Life student employees to refer media and press inquiries to a supervisor in a manner which appeared to entirely restrict their ability to speak to the media. Plaintiff claims that this policy (1) functioned as a prior restraint on speech and imposed content-based and viewpoint-based restrictions on a public employee in violation of the First Amendment; (2) was overbroad on its face because it restricted protected speech, including speech by employees in their capacities as private citizens on matters of public concern; and (3) was impermissibly vague, leaving students and employees unclear and uncertain as to what speech was prohibited, when restrictions applied and what circumstances—if any—allowed for media engagement. Regarding Count One, plaintiff "is not contesting the defenses lodged in Defendant's Memorandum in Support with regard to Count I, the facial constitutional challenge to the policy at issue." Plaintiff's Memorandum In Opposition To Defendant Emily Chelgren's Motion To Dismiss (Doc. #32) at 4. Plaintiff does not respond to defendants' argument that any "as-applied" challenge would duplicate his First Amendment retaliation claim and he has therefore abandoned that theory of relief.

Count Three alleges that in violation of Section 1983, defendants violated his right to procedural due process under the Fourteenth Amendment. Specifically, plaintiff claims that as an employee at a public university, he had a property interest in continued employment and was

(continued. . .)

confines its analysis to Count Two.

Count Two alleges that in violation of Section 1983, defendants retaliated against plaintiff for engaging in speech which the First Amendment protects. Plaintiff claims that he engaged in protected speech by speaking to a member of the media in his capacity as a private citizen on a matter of public concern—specifically, by criticizing KU policies and practices related to housing policies for LGBTQ+ community members pursuant to recent state and federal legislative directives.

**Analysis**

Defendants argue that the Court should dismiss Count Two because (1) plaintiff does not state a claim on which relief can be granted for First Amendment retaliation and (2) both defendants have qualified immunity. In addition, Waters argues that the first amended complaint mentions her only six times in mostly passive settings, which does not state a claim or overcome

---

[3] (. . .continued)
entitled to due process before being terminated, that defendants failed to provide plaintiff complete notice of his right to appeal and an opportunity to be meaningfully heard prior to the termination. In addition, plaintiff claims that defendants terminated his employment before his time to appeal his probationary status had closed. Regarding Count Three, plaintiff states that he "is not contesting Defendant's arguments as to his procedural due process claim" and that "[d]efendant is likely correct that the Kansas Judicial Review Act was the correct vehicle for appealing his termination." Id. at 11.

Plaintiff adds, however, "[i]f the Court would permit leave to amend the pleadings to make a claim under the [Kansas Judicial Review Act], Plaintiff would gladly entertain the chance to appeal the termination decision." Id. The Court disregards any motion or request to amend which does not comply with District of Kansas Rule 15.1(a). Under that rule, a party filing a motion to amend that may not be filed as a matter of right must (1) set forth a concise statement of the amendment or leave sought; (2) attach the proposed pleading or other document; and (3) attach a redlined version of the proposed amendment that shows all proposed changes to the pleading. D. Kan. R. 15.1(a); see Requena v. Roberts, 893 F.3d 1195, 1204 n.3 (10th Cir. 2018) (insufficient to merely suggest that party should be allowed to amend if judge finds pleadings deficient; party must file written motion for leave to amend, giving adequate notice of basis of proposed amendment). Because plaintiff has not satisfied any of these requirements, the Court overrules his imbedded request to amend the complaint.

qualified immunity.

## I.    Claims Against Emily Chellgren In Her Individual Capacity

### A.    Whether Plaintiff States A First Amendment Retaliation Claim Against Chellgren

Plaintiff claims that Chellgren terminated his employment because he engaged in speech which the First Amendment protects.  Chellgren argues that plaintiff fails to state a claim because his speech related to his role as a proctor, so he made his speech pursuant to his official duties and the First Amendment did not protect it.  In response, plaintiff argues that his job duties as a proctor did not include speaking to the media or similar tasks, so his speech was not pursuant to his official duties.  In reply, Chellgren argues that plaintiff's speech was pursuant to his official duties because it owed its existence to his role as proctor, criticized the University's policy and made clear that he would not enforce the policy.

To evaluate whether a public-employee plaintiff has established a prima facie case of First Amendment retaliation, the Court applies a test derived from Supreme Court decisions in Garcetti v. Ceballos, 547 U.S. 410 (2006), and Pickering v. Board of Education, 391 U.S. 563 (1968).  For a public employee to state a prima facie case, he must establish five elements: (1) the protected speech was not made pursuant to his official duties; (2) the protected speech addressed a matter of public concern; (3) the government's interests as an employer did not outweigh the employee's free-speech interests; (4) the protected speech was a motivating factor in the adverse employment action; and (5) defendant would not have made the same employment decision in the absence of the protected speech.  Timmins v. Plotkin, 157 F.4th 1275, 1277 (10th Cir. 2025); see Pryor v. Sch. Dist. No. 1, 99 F.4th 1243, 1250 (10th Cir. 2024).  As mentioned above, defendant contests only the first element: whether plaintiff's speech to the media was pursuant to his official duties.  If plaintiff made his speech pursuant to his official duties, the First Amendment does not protect

it, and plaintiff fails to state a claim.

In determining whether speech was pursuant to an employee's official duties, "[t]he critical question under Garcetti is whether the speech at issue is itself ordinarily within the scope of the employee's duties, not whether it merely concerns those duties." Timmins, 157 F.4th at 1277–78 (quoting Lane v. Franks, 573 U.S. 228 (2014)). The Tenth Circuit takes a "practical view of all the facts and circumstances surrounding the speech and the employment relationship." Id. at 1280 (quoting Knopf v. Williams, 884 F.3d 939, 946 (10th Cir. 2018)). The Court considers facts such as the tasks in the employee's job description, the frequency with which the employee performs a task, the subject matter of the employee's speech, the recipient of the employee's speech and the legal obligation for the employee to speak, but no one fact is determinative. Id.

The fact that the employee's speech "owes its existence to" or "relates to" his employment does not mean that he speaks pursuant to his official duties. Id. (quoting Lane, 573 U.S. at 239). An employee speaks pursuant to his official duties when the speech "stem[s] from" and is "the type of activity [he] is paid to do." Id. (quoting Tufaro v. Okla. ex rel. Bd. of Regents of the Univ. of Okla., 107 F.4th 1121, 1139 (10th Cir. 2024)). The "mere fact that a citizen's speech concerns information acquired by virtue of [his] public employment does not transform that speech into employee—rather than citizen—speech." Id. (quoting Lane, 573 U.S. at 240).

Here, the first amended complaint does not allege that plaintiff's job duties as a proctor involved speaking to the press about Grace Pearson policies, or that KU paid him to do similar tasks.[4] In fact, the first amended complaint alleges that KU policy prohibits proctors from speaking

---

[4]    Exhibits A and B, the probation and termination letters from Chellgren to plaintiff, make statements about plaintiff's job duties. The letters claim that plaintiff's job description required him to "demonstrate a commitment to personal integrity, such as modeling good judgment, ethical behavior, and adherence to laws and policies" and to "[r]efer a student's parents,

(continued. . .)

to the press.  Neither the first amended complaint nor the article suggest that plaintiff's speech was pursuant to his employment, and they do not address the many factors that are relevant to that question.  See Timmins, 157 F.4th at 1280 (factors include job description, frequency employee performs task, subject matter of speech, recipient of speech and employee's legal obligation to speak).

Chellgren argues that plaintiff's job duties included "enforcing University of Kansas and KU Housing & Residence Life regulations and policies," which included Grace Pearson's new bathroom policy.  Chellgren argues that plaintiff criticized and indicated his unwillingness to enforce the policy, so his speech must have been pursuant to his official duties.

This argument cannot withstand even superficial analysis.  First, the article does not quote plaintiff as indicating that he was unwilling to enforce the new policies, and the record contains no basis for Chellgren's claim in that regard.  Second, the policy changes which plaintiff addressed had not gone into effect at the time of his speech.  They were effective the following school year (2025–26), and KU apparently had no plans to employ plaintiff at Grace Pearson during that school year.[5]  According to the article, the proposed policies were specific to Grace Pearson, and because plaintiff was not going to work there, he had no job duty to enforce the new policies.  Thus, plaintiff was not responsible for enforcing the new policies and was never going to be responsible for doing so.

---

[4] (. . .continued)
relatives, friends, and/or the media (press) to [his] supervisor."  Chellgren argues that the Court can consider the letters because the first amended complaint refers to and relies on them.  The letters are not, however, "central" to plaintiff's claim.  See Associated Wholesale Grocers, 130 F.3d at 1384; Hampton v. root9B Techs., Inc., 897 F.3d 1291, 1297 (10th Cir. 2018).  Also, to the extent they purport to describe plaintiff's job duties, these statements appear to be hearsay.

[5]    KU had offered plaintiff a position in another residence hall for 2025–26.

Therefore, defendant is not entitled to dismissal on the ground that plaintiff's speech was pursuant to his official duties.  Count Two states an actionable claim for First Amendment retaliation.

### B.       Whether Chellgren Has Qualified Immunity

Chellgren argues that she is entitled to qualified immunity on Count Two.  Plaintiff disagrees, arguing that she violated his clearly established right to be free from retaliation for exercising his First Amendment right to free speech.

Qualified immunity shields government officials from liability for performing discretionary functions if "their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known."  Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982).  Defendants who assert qualified immunity—including in a motion to dismiss—are presumptively immune from suit.  Cuervo v. Sorenson, 112 F.4th 1307, 1314 (10th Cir. 2024).  On a motion to dismiss, plaintiff can overcome the presumption if he establishes that the complaint alleges factual content from which the Court can reasonably infer that (1) defendant's conduct violated a constitutional right and (2) that right was clearly established at the time of the alleged violation.  Id.; see Iqbal, 556 U.S. at 678.

Whether a right is "clearly established" is an objective test.  A right is clearly established "when a Supreme Court or Tenth Circuit decision is on point, or if the clearly established weight of authority from other courts shows that the right must be as the plaintiff maintains."  Thomas v. Kaven, 765 F.3d 1183, 1194 (10th Cir. 2014) (quoting PJ ex rel. Jensen v. Wagner, 603 F.3d 1182, 1196–97 (10th Cir. 2010)).  A constitutional right is clearly established when it is "sufficiently clear that every reasonable official would have understood that what he is doing violates that right." Heard v. Dulayev, 29 F.4th 1195, 1203 (10th Cir. 2022) (citations omitted).  Under this demanding

standard, the alleged violation "must have a sufficiently clear foundation in then-existing precedent" either with "controlling authority or a robust consensus of cases of persuasive authority." Id. (citations omitted).

The Supreme Court has warned against defining a clearly established right "at a high level of generality" and emphasized that the law must be "particularized to the facts of the case," but this does not mean that a right is only clearly established if a case exists that is factually identical. Est. of Ceballos v. Husk, 919 F.3d 1204, 1215 (10th Cir. 2019) (citations omitted). This makes good sense: if a right is clearly established only when a prior case presents identical facts, qualified immunity would apply under every different fact pattern. Under this standard, officials would always be entitled to qualified immunity so long as their actions—no matter how outrageous or harmful—were sufficiently novel. While the case need not be directly on point, the "existing precedent must place the lawfulness of the defendant's conduct beyond debate." Heard, 29 F.4th at 1203 (citations and brackets omitted).

Here, as explained above, plaintiff has stated a claim that defendant's conduct violated his First Amendment rights, so the Court must determine whether his right was clearly established at the time of defendant's actions. This determination turns on whether the law clearly established that the type of speech which the first amended complaint alleges was not pursuant to plaintiff's official duties, i.e. that plaintiff spoke as a private citizen rather than as a public employee.

The Supreme Court has long established that speech by citizens on matters of public concern lies at the heart of the First Amendment, even when such speech concerns information related to or learned through public employment. Lane, 573 U.S. at 236. In Garcetti and Pickering, the Supreme Court held that the fact that speech concerns the subject matter of plaintiff's employment is not dispositive, and that the "First Amendment protects some expressions related

to the speaker's job." Garcetti, 547 U.S. at 421. In Garcetti, the Supreme Court clarified that the controlling factor is whether the speech is made pursuant to the employee's duties, i.e. if the speech is part of what he "was employed to do" and "paid to perform." Id. In Lane, the Supreme Court further clarified that "the mere fact that a citizen's speech concerns information acquired by virtue of his public employment does not transform that speech into employee—rather than citizen—speech." Lane, 573 U.S. at 236. The critical question is whether the speech at issue is itself ordinarily within the scope of an employee's duties, not whether it merely concerns those duties. Id. at 239.

In November of 2025 (after Chellgren's conduct took place), the Tenth Circuit rejected overly-broad interpretations of Garcetti by clarifying and applying principles which the Supreme Court established in Lane. See Timmins, 157 F.4th 1275. Before Timmins, Tenth Circuit precedent had "taken a broad view of the meaning of speech that is pursuant to an employee's official duties." Knopf, 884 F.3d at 945 (citing Chavez-Rodriguez v. City of Santa Fe, 596 F.3d 708, 713 (10th Cir. 2010)). The Tenth Circuit had held that "speech may be made pursuant to an employee's official duties even if it deals with activities that the employee is not expressly required to perform." Brammer-Hoelter v. Twin Peaks Charter Acad., 492 F.3d 1192, 1203 (10th Cir. 2007).

Chellgren argues that until it decided Timmins in November of 2025, the Tenth Circuit had no clearly established law whether plaintiff's speech was pursuant to his official duties. Chellgren argues that to defeat qualified immunity, plaintiff must cite a case which holds that a proctor who publicly discusses his unwillingness to enforce a policy which his job requires him to enforce is not speaking pursuant to his official duties. Plaintiff responds that at the time of defendant's actions, Garcetti (2006) and Lane (2014) clearly established that he spoke not pursuant to his

-12-

official duties, but as a citizen.  Defendant replies that Tenth Circuit precedent prior to Timmins misread Garcetti and defined "pursuant to official duties" to broadly include speech that merely concerned employees' duties—which plaintiff's speech did.  Chellgren concludes that reasonable officials in her position would not have known that it was unconstitutional to terminate plaintiff's employment for speech in which a proctor publicly declared his refusal to enforce residence hall policies which his job duties required him to enforce.

Again, this argument misses the mark.  The policy changes which plaintiff spoke about were not in effect when he spoke, and according to the first amended complaint and the article, he turned down KU's offer of employment for the school year when they would become effective.  KU never employed plaintiff to enforce the new policies.  Therefore, whatever the state of Tenth Circuit precedent, plaintiff's speech did not concern any duty to enforce the new policies.  At most, plaintiff's speech concerned *future* duties that KU might require him to perform if he were to accept a different proctor job the following year.  Even before Timmins, the law was clearly established that an employee does not speak pursuant to his official duties when his job duties do not require such speech (or similar activity) and his speech does not concern his duties.  See Klaasen, 348 F. Supp. 3d at 1170 (speech related to plaintiff's ability to carry out duties is speech pursuant to official duties under Garcetti and Pickering).

Thus, Chellgren is not entitled to dismissal based on qualified immunity.

## II.     Claims Against Sarah Waters In Her Individual Capacity

Waters argues that first amended complaint fails to state a claim against her because it mentions her only six times and does so mostly in passive settings (such as Chellgren copying her on email) and lacks specific and particularized allegations about what she supposedly did to plaintiff.  Waters argues that she cannot determine whether plaintiff alleges that she was personally

involved in the probation and termination decisions or is responsible merely as a supervisor.  In response, plaintiff clarifies that he is making a supervisory liability claim.  Plaintiff argues that his first amended complaint provides Waters with notice that he is alleging that she was involved in his termination.  Waters responds that the first amended complaint contains no facts—as opposed to legal conclusions—which suggest that she retaliated against plaintiff in any way.

Section 1983 does not authorize respondeat superior liability for a supervisor based solely on the actions of her subordinates.  Burke v. Regalado, 935 F.3d 960, 997 (10th Cir. 2019).  To establish a claim against defendant in her personal capacity based on her supervisory responsibilities, plaintiff must show (1) personal involvement, (2) causation and (3) state of mind.  Id.; see Brown v. Montoya, 662 F.3d 1152, 1163 (10th Cir. 2011) (to establish personal capacity supervisory liability, plaintiff must show that defendant (1) promulgated, created, implemented or possessed responsibility for the continued operation of a policy that (2) caused the complained of constitutional harm and (3) acted with the state of mind required to establish the alleged constitutional deprivation).

The first amended complaint alleges that Waters (1) was the Executive Director of KU Housing and Residence Life and (2) was copied on plaintiff's termination letter.  It does not allege facts which show that she was personally involved in the continued operation of any policy or acted with any specific state of mind.  Thus, the first amended complaint fails to state a supervisory liability claim against Waters.  See Kidwell v. Hayden, No. 20-3238-SAC, 2020 WL 6044100, at *2 (D. Kan. Oct. 13, 2020) (bare claims of involvement not sufficient to state claim for relief; plaintiff must describe specific acts by each defendant that violated constitutional rights).

Accordingly, the Court dismisses plaintiff's claims against Waters for failure to state a claim for relief.

-15-

**IT IS THEREFORE ORDERED** that Defendant Emily Chellgren's Motion To Dismiss (Doc. #21) filed September 15, 2025 is **SUSTAINED in part.**  Counts One and Three of plaintiff's first amended complaint against Emily Chellgren are dismissed with prejudice, but defendant's motion to dismiss is **OVERRULED** as to Count Two.

 **IT IS FURTHER ORDERED** that Defendant Sarah Waters' Motion To Dismiss (Doc. #23) filed September 15, 2025, is **SUSTAINED.**

Dated this 18th day of March, 2026 at Kansas City, Kansas.

s/ Kathryn H. Vratil
KATHRYN H. VRATIL
United States District Judge
